**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case Nos.: 25-CR-080-001 (SLS)** |
| | : | **25-CR-095-002 (SLS)** |
| **v.** | : | |
| | : | |
| **SHAREEM HALL,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Supplemental Memorandum in Aid of Sentencing to address the defendant's main arguments in his Sentencing Memorandum,[1] pursuant to the Court's Minute Order.

## SUPPLEMENTAL ARGUMENTS

The defendant argues that his Second Degree Murder conviction is not a Crime of Violence and that his request that this Court sentence him to a probationary sentence is appropriate. Each of these arguments will be addressed in turn *infra*.

## I.

Counsel for the defendant argues that the defendant conviction for Second Degree Murder is not a Crime of Violence. Specifically, counsel argues, *inter alia*, that: "[t]he government and probation have incorrectly calculated Mr. Hall's Base Offense Level as 22. They claim that D.C. Second Degree murder pursuant to § 22-2103 is a crime of violence under the definition set out in

---

[1] Because the Defendant's Sentencing Memorandum was filed Under Seal, undersigned counsel for the government was not made aware of its ECF number. However, undersigned counsel for the government can reference the page numbers.

the Sentencing Guidelines. However, although somewhat counterintuitive, D.C. Second Degree murder is not a crime of violence. Therefore, Mr. Hall's Base Offense Level should be 20 for 25-cr-80 and with acceptance of responsibility, his Offense Level should be 17. . . . Second Degree murder is not a crime of violence under the elements clause for two reasons: (1) it encompasses felony murder, and (2) requires a *mens rea* of only recklessness." *See* Defendant's Sentencing Memorandum at 6-7. Simply stated, defendant's arguments are misplaced and not supported by any applicable case authority or legal analysis.

**Defendant's Conviction for D.C. Second-Degree Murder Qualifies as a "Crime of Violence."**

As the government explained in its sentencing memorandum, defendant's conviction for D.C. Second-Degree Murder constitutes a "crime of violence" under U.S.S.G. § 4B1.2(a) under both the "elements clause," U.S.S.G. § 4B1.2(a)(1), and the "enumerated offense clause," § 4B1.2(a)(2). Under D.C. law, "[t]o show that [a defendant] committed second-degree murder while armed, the government was required to prove that [the defendant] (1) caused the death of the victim; (2) had the specific intent to kill or commit seriously injure the decedent, or acted in conscious disregard of an extreme risk of death or serious bodily injury to the decedent; and that (3) there were no mitigating circumstances." *Mitchell v. United States*, 985 A.2d 1125, 1135 (D.C. 2009) (cleaned up). That sort of intentional, knowing, or extremely reckless killing of another person necessarily constitutes both a "use of physical force" under the elements clause and a crime that is "murder" under the enumerated-offense clause.

Beyond disputing the legal consensus that "extreme recklessness" satisfies the elements clause (an issue that we have already addressed), defendant's sentencing memo proposes an alternative theory that is new to the government: that there is allegedly a "felony murder" version

of D.C. Code second-degree murder, so D.C. second-degree murder flunks the categorical approach. For at least two separate reasons, that theory does not succeed.

### A. Defendant Shows No Possibility that He Was Convicted of D.C. Code Second-Degree Felony Murder.

D.C. Code second-degree murder is a sadly common charge in the District of Columbia. The elements are equally familiar: "In order to show that a defendant committed second-degree murder while armed, the government must prove three elements beyond a reasonable doubt: (1) the defendant caused the death of the victim; (2) the defendant had the specific intent to kill or commit serious bodily injury on the victim, or acted with conscious disregard or with an extreme risk of death or serious bodily injury to the decedent; and (3) there were no mitigating circumstances." *Robinson v. United States*, 928 A.2d 717, 728 (D.C. 2007). These elements plainly do not capture a "felony murder" version of D.C. second-degree murder. Rather, in the District, felony murder is prosecuted as a type of first-degree murder for a defendant who "without purpose to do so kills another in perpetrating or in attempting to perpetrate any arson, . . . first degree sexual abuse, first degree child sexual abuse, first degree cruelty to children, mayhem, robbery, or kidnapping, or in perpetrating or attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, or in perpetrating or attempting to perpetrate a felony involving a controlled substance." D.C. Code § 22-2101; *see, e.g.*, Hewitt v. United States, --- A.3d ---, No. 24-CO-0168, 2026 WL 531711, at *3 (D.C. Feb. 26, 2026).

To date, the D.C. Court of Appeals has declined to recognize a category of second-degree felony murders for non-purposeful killings while perpetrating a non-enumerated felony. In its most comprehensive treatment of D.C. homicide law, the *en banc* DCCA explained that "[w]hat remains unclear in the District of Columbia is the status of one who commits a non-purposeful killing in

the course of a felony not specified" in the first-degree murder statute, noting that it had "found no case in this jurisdiction explaining what limitations on the common law felony-murder rule, if any, have been recognized in the District of Columbia since the 1940 statutory modification of the felony-murder provision." *Comber v. United States*, 584 A.2d 26, 40 n.15 (D.C. 1990) (citing *Towles v. United States*, 521 A.2d 651, 660 n.4 (1987) (*en banc*) (Newman, J., dissenting)). *Comber* explained that "[t]he fact that the felonies enumerated in the District of Columbia felony-murder statute correlate closely with those offenses recognized as felonies at early common law might suggest that Congress intended to limit the scope of the felony-murder doctrine by anchoring it to its common-law moorings. On the other hand, it might be argued that Congress left a residual category of second-degree felony murder, in which the malice required for murder stems from the commission of a non-enumerated felony." *Id.* Ultimately, *Comber* did "not resolve whether second-degree felony murder exists in this jurisdiction, nor, if it does, . . . determine the precise limitations to which it is subject." *Id.* Later DCCA decisions have likewise declined to resolve whether "whether the offense of second degree felony murder exists in the District of Columbia." *Everetts v. United States*, 627 A.2d 981, 987 (D.C. 1993); *see also Fisher v. United States*, 749 A.2d 710, 712 (D.C. 2000) ("We find no realistic possibility in the record that the jury convicted Fisher of a crime of 'second degree felony murder' on which it was never instructed. That crime, *if it exists in this jurisdiction*, involves a nonpurposeful killing during the commission of a felony not enumerated in the felony murder statute.") (emphasis added); *Towles*, 521 A.2d at 660 n.4 (Newman, J., dissenting) ("The government fails to cite any case in this jurisdiction indicating the existence of some 'residual' second degree felony murder, nor am I aware of any.").

Given that the DCCA has declined to even decide whether the crime of D.C. second-degree

felony murder even exists, the theoretical possibility that such a crime will be recognized in the future is not a basis for declining to treat defendant's second-degree murder conviction as a crime of violence. As the Supreme Court has explained, when applying the categorical approach to a state statute, "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). While the Supreme Court has limited the "realistic probability" test in cases involving a federal predicate, it continues to apply when (as here) the underlying crime is a state predicate. *See United States v. Taylor*, 596 U.S. 845, 858-59 (2022).

Even putting the "realistic probability" test aside, it is clear that there is not even a "theoretical possibility" that defendant's second-degree murder conviction was based on D.C. "second-degree felony murder," because the DCCA has declined so far to recognize such a crime. Instead, D.C. second-degree murder requires an intentional, knowing, or extremely reckless killing, satisfying both "crime of violence" definitions.

### B. If It Exists, D.C. Code Second-Degree Felony Murder Would Be Divisible.

Even if there were such a crime as D.C. Code second-degree felony murder, it would be "divisible" from the standard version of intentional, knowing, or extremely D.C. Code second-degree murder. And because defendant was prosecuted under the latter version of the statute, his

prior conviction would remain a "crime of violence" under the Guidelines.

When deciding whether an offense is a crime of violence under the elements clause, "courts use the categorical approach," where "the facts of a given case are irrelevant," and "[t]he focus is instead on whether the elements of the statute of conviction meet the federal standard." *Borden*, 141 S. Ct. at 1822. "If any—even the least culpable—of the acts criminalized do not entail th[e] kind of force [required by the elements clause], the statute of conviction does not categorically match the federal standard, and so cannot serve as [a] predicate." *Id.* An additional complication comes if a statute "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis v. United States*, 579 U.S. 500, 505 (2016). A statute that lists alternative elements—as opposed to listing "various factual means of committing a single element"—is called "divisible." *Id.* at 505-06; *see also id.* at 517-19 (guidance on determining if statute lists alternative elements or means). To decide which alternative crime the defendant was convicted of under a "divisible" statute, courts apply the "modified categorical approach," allowing them to "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)." *Id.*[2]

Given that D.C. law has yet to recognize D.C. second-degree felony murder, there is no guidance on whether such a crime would be divisible from standard D.C. second-degree murder. But by analogy to D.C. first-degree murder, felony murder would surely be divisible, just as D.C. first-degree premeditated murder is divisible from D.C. first-degree felony murder for at least three reasons.

---

[2] *See* Attachment 1 (Filed Under Seal) – Defendant's Second Degree Murder Signed Plea Agreement.

*First*, and most importantly, D.C. case law treats these as separate crimes. *See Mathis*, 579 U.S. at 517-18. A defendant must be separately charged, convicted, and sentenced for D.C. first-degree premeditated murder and D.C. felony murder, allowing the appellate court to review the convictions separately before remanding for merger if both convictions are valid. *See Garris v. United States*, 491 A.2d 511, 514-15 (D.C. 1985); *accord Robinson v. United States*, 890 A.2d 674, 686 (D.C. 2006); *Green v. United States*, 718 A.2d 1042, 1063 & n.28 (D.C. 1998); *Thacker v. United States*, 599 A.2d 52, 63-64 & n.16 (D.C. 1991). And the justification for merger— "[w]hen there is only one killing, the defendant may not be convicted of more than one murder," *Thacker*, 599 A.2d at 63—does not suggest that these are the same crime; the same rule applies to a conviction for first-degree murder and second-degree murder. *See, e.g.*, *Portillo v. United States*, 62 A.3d 1243, 1260 (D.C. 2013).

*Second*, the face of the statute likewise makes clear that premeditated murder and felony murder have different elements, and are thus distinct crimes. *See Mathis*, 579 U.S. at 518. Perhaps most strikingly, premeditated murder has the highest known *mens rea* for the killing ("deliberate and premeditated malice"), while felony murder has the lowest ("without purpose to do so"). And the standard Redbook jury instructions for the two charges bear little resemblance to each other. *See* D.C. Criminal Jury Instructions § 4205(I)-(II) (5th ed. 2021). It makes no sense to think of these as mere "alternative means" of committing a single coherent crime.

*Third*, and finally, courts interpreting the parallel federal statute, which likewise combines first-degree premeditated and felony murder in a single statute, have similarly found the federal statute divisible. *See Jackson*, 32 F.4th at 285-87.

Defendant's arguments call to mind the Supreme Court's recent decision recognition that

any argument "that murder is not a crime of violence" would be "outlandish." *Delligatti v. United States*, 604 U.S. 423, 436 (2025). Recognizing that "[t]he elements clause is . . . the natural home for murder and other prototypical violent crimes," this Court should recognize "the unreasonableness of excluding such crimes from the elements clause," *Delligatti*, 604 U.S. at 436-37, and find that D.C. second-degree murder is a crime of violence.

## II.

## <u>A PROBATIONARY SENTENCE IS INAPPROPRIATE</u>

The defendant asks this Court to sentence him to a probationary sentence because, *inter alia*, "[a]n eighteen-month period of probation is appropriate here. First, Mr. Hall's sentence will be crafted with the understanding that he will receive a sentence from the Parole Commission that will result in a sentence that will come close to his guideline range. Second, a sentence in this case will effectively add no time of incarceration. Third, a sentence to any prison time will only add danger and risk to Mr. Hall as he is transferred on multiple occasions to different facilities and exposed to substantial risk. Fourth, judges in this courthouse do sentence individuals to probation, especially in cases where the firearm was not used and the individual did not flee or use the gun in any kind of reckless manner. And as he told the police, he was possessing the firearm for self-defense purposes." *See* Defendant's Sentencing Memorandum at 29. Fundamentally this argument is without merit because it asks this Court to sentence this defendant on the probability of a sentence the defendant may or may not receive from the U.S. Parole Commission for his previous Second Degree Murder Conviction release violations and convictions in the instant cases.

Ostensibly, the defendant asks to Court to do something that is unreasonable and not supported by the Sentencing Guidelines. Specifically, as outlined in the defendant's PSR in Case

No. 25-CR-095, the defendant is ineligible for probation: "Count 1: Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, commentary note 2[3]. Count 2: A probation permissible sentence is not authorized." *See* PSR ECF Nos. 80 & 95.

More broadly, "the district court is required to consider all non-frivolous reasons asserted for an alternative sentence," but it "is not required 'to individually and expressly address every non-frivolous argument advanced by a defendant on the record[.]'" *United States v. Iracks*, 106 F.4th 61, 69 (D.C. Cir. 2024) (*quoting United States v. Pyles*, 862 F.3d 82, 88 (D.C. Cir. 2017)). "Sentencing, after all, is not a game of Simon Says." *United States v. Brinson-Scott*, 714 F.3d 616, 626 (D.C. Cir. 2013). "A trial judge may hear, understand, and weigh a defendant's non-frivolous argument even though the judge does not fully and explicitly address that precise argument on the record." *Pyles*, 862 F.3d at 91. "[S]o long as the judge provides 'a reasoned basis for exercising [her] own legal decision making authority,' our Circuit Court generally presume[s] that [the Court] adequately considered the arguments and will uphold the sentence if it is otherwise reasonable." *United States v. Locke*, 664 F.3d 353, 358 (D.C. Cir. 2011) (*quoting Rita v. United States*, 551 U.S. 338, 356 (2007)). "In this case, the defendant has proffered nothing to rebut that presumption." *Id*.

Our Circuit Court has stated that "[t]he substantive reasonableness inquiry [for a sentence] . . . boils down to the following question: in light of the facts and circumstances of the offense and

---

[3] Where the applicable guideline range is in Zone C or D of the Sentencing Table (i.e., the minimum term of imprisonment specified in the applicable guideline range is ten months or more), the guidelines do not authorize a sentence of probation. *See* §5C1.1 (Imposition of a Term of Imprisonment).

offender, is the sentence so unreasonably high or unreasonably low as to constitute an abuse of discretion by the district court?" *United States v. Gardellini*, 545 F.3d 1089. 1093 (D.C. Cir. 2008). When undertaking such inquiry, our Circuit Court "agree[s] with [its] sister circuits that a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness." *United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006); *accord United States v. Law*, 528 F.3d 888, 902 (D.C. Cir. 2008). As a result, "a within-Guidelines sentence will almost never be reversed on appeal as substantively unreasonable." *Gardellini*, 545 F.3d at 1092.

As the United States previously outlined to this Court, even though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing."   543 U.S. 220, 264 (2005); *see also United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated.") Moreover, the Guidelines' recommended sentencing range will ordinarily "'reflect a rough approximation of sentences that might achieve [18 U.S.C.] § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) (*quoting Rita v. United States*, 551 U.S. 338, 347-50 (2007)); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness"). The defendant's criminal history is very significant and concerning and the fact that he was on release status supervision for a violent murder conviction – all demonstrates that this Court should sentence the defendant to the high-end sentence of the applicable Guidelines range in each case of conviction, to be followed by 36

months' Supervised Release.

In fact, the defendant also, wrongly, suggests that if the Court sentenced the defendant to a guideline sentence, that would be an unwarranted sentence and the defendant claims that because of his Criminal History such a sentence would be based on racial disparities. *See* Defendant's Sentencing Memorandum at 29-40. These arguments are meritless, and the sentencing guidelines are not a product of a race-based analysis. 18 U.S.C. Section 3553(a)(6) ***requires that district courts consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct*.**" 18 U.S.C. § 3553(a)(6). ***It "does not require the district court to avoid sentencing disparities between []defendants who might not be similarly situated*.**" *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (internal quotation marks omitted). Where a district court "correctly calculate[s] and carefully review[s] the Guidelines range," it "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities." *Gall*, 552 U.S. at 54 (explaining that "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines range").

## CONCLUSION

For the reasons stated above and in the government's initial sentencing memorandum, the United States respectfully recommends that this Court sentence defendant Hall to a high-end sentence of the applicable guideline term in each case.  Specifically, in case no. 25-080-001, the government requests a sentence of 57 months of incarceration followed by 36 months of Supervised Release.   In case no. 25-095-002, the government requests that the Court sentence the defendant on Count One to 48 months' incarceration and on Count Two to 24 months'

11

incarceration, to be run concurrently to each other but consecutive to case no. 25-080-001.

WHEREFORE, the United States respectfully advances that its recommended sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


By:    */s/ Emory V. Cole*
       EMORY V. COLE
       PA. Bar No. 49136
       Assistant United States Attorney
       601 D Street, N.W.
       Washington, D.C. 20530
       Emory.Cole@usdoj.gov
       202-252-7692